IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| MALIK RIMMER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NATHAN SANCHEZ, et al.,<br><br>　　　　　Defendants. | No.　C22-4058-LTS<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

_____

This matter is before me on defendants' motion (Doc. 30) to dismiss. Plaintiff Malik Rimmer filed a pro se resistance (Doc. 31) and defendants filed a reply (Doc. 32). Oral argument is not necessary. *See* L.R. 7(c).

## I.　BACKGROUND

On October 26, 2022, Rimmer filed a pro se civil rights complaint (Doc. 1-1) and a motion (Doc. 1) to proceed in forma pauperis. His complaint alleges that Officers Nathan Sanchez and Justus Knudsen used excessive force when arresting him, injuring his eye and back, and that he was not provided with medical care for those injuries.[1] Rimmer asserted claims pursuant to both 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He alleged defendants violated his Fourth, Eighth and Fourteenth Amendment rights, in addition to

---

[1] After the arrest, Rimmer was convicted of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and sentenced to 60 months' imprisonment. *See* CR22-4035-LTS, Doc. 59.

four provisions of the Iowa Constitution.[2] Doc. 24 at 3-4. He sued Sanchez and Knudsen in both their individual and official capacities. *Id.* at 2. He states: "I would like to sue the Sioux City officers an[d] police department for 50 million dollars for pain an[d] suff[er]ing, exc[e]ssive force, an[d] deprivation of my constitutional rights. They beat me because of my color an[d] the[y] stop me because [of] color." *Id.* at 5.

In sum, Rimmer alleges: "I was harassed an[d] stalked by a police officer Nathan Sanchez of Sioux City [which] led to him slamming me very hard onto a Jailer Randy UHL car, and Officer Justus Knudsen (Sioux City) came an[d] start[ed] punching me with a close[d] fist in my eye, leaving me with multiple back problems that [have] never been addres[sed], an[d] a black an[d] purple eye an[d] a blood clot in my eye. There [are] videos, my mugshot from Woodbury Jail, I have statements." *Id.* at 4. More specifically, he asserts that on April 3, 2022, he noticed Sanchez was driving behind him with no lights or sirens and Rimmer feared for his safety from police brutality based on his race. *Id.* at 7. After he remembered he had a firearm he "thought to myself there's no way out" and he might "end up dead either way" so he "kept going when [Sanchez] did turn on his lights an[d] sirens." *Id.* Rimmer states that after he damaged his vehicle, he stopped it, got out and ran. *Id.* at 7-8. He asserts that he "didn't commit a crime so I still wasn't just going to give up, [be]cause I've seen what happen[s] to black people when police target them." *Id.* at 8.

Rimmer further alleges: "I was in flight for my life then I remember[ed] I had a firearm again then I felt it fall." *Id.* at 8. He states that he was stopped by Sanchez, who "had me shook up with so much fear I gave up an[d] gave him multiple demands to kill m[e] since it seemed they hated my black skin so bad." *Id.* He asserts that Sanchez

---

[2] On the part of the standard form asking what federal constitutional or statutory rights are violated by state or local officials for his § 1983 claims, Rimmer listed Iowa Constitution Article I, §§ 1, 4, 8 and 17. Doc. 24 at 3. On the part of the standard form asking what constitutional rights are being violated by state or local officials for his *Bivens* claims, Rimmer listed the Fourth, Eighth and Fourteenth Amendments. Iowa Constitution Article I, § 8 mirrors the Fourth Amendment, and Iowa Constitution Article I, § 17 mirrors the Eighth Amendment.

"grabbed me I tried grabbing him wasn't succes[s]ful, then he ta[c]k[le]d me very hard on the car an[d] I went down I felt my back crack." *Id*. He further alleges that "it hurt[ ] real bad as you can see on the video I give up an[d] say I'm sorry multiple times getting yanked pulled an[d] forced down with 3 to 4 people an[d] Officer Justus Knudsen punching as hard [as] he can knocking me out." *Id*. Rimmer states: "I still haven't been provided with any medical for my back or eye" and that his medical needs have not been addressed since his arrest. *Id*. at 5, 8. He asserts: "I have the Rights of person, in this since I wasn't able to defend my life and or liberty, violation my safety." *Id*. at 9. He further alleges: "This was also violation for me to secure my person or property etc I was followed or stalked by this officer before he found prob[ab]le cause, the unreasonable seizures he violated my religion of the right to protect myself which I have a god giving right." *Id*. Rimmer invokes "Qurianic Islamic Law: self defense" and alleges that "they disarmed me of my firearm for protection purpose an[d] I have a god giv[en] right to protect my self." *Id*. He again states that "there [are] videos in pos[s]ession of the Federal court in my public defender" and that he requested that the videos and mugshot be "released to the public." *Id*.

On October 31, 2022, I entered an order (Doc. 2) finding that Rimmer's motion to proceed in forma pauperis did not comply with 28 U.S.C. § 1915(a)(1) because it did not include a copy of his prisoner trust statement or equivalent document. After unsuccessfully appealing that order, Rimmer eventually filed an amended pro se motion (Doc. 21) for leave to proceed in forma pauperis that complied with the rules.

On October 25, 2024, I entered an initial review order that: (1) granted Rimmer's amended motion to proceed in forma pauperis; (2) dismissed the Sioux City Police Department as a defendant;[3] (3) allowed Rimmer's excessive force claims against

---

[3] I noted that Rimmer listed the Sioux City Police Department in the caption of his § 1983 form, but he did not include the police department in that part of the form naming the defendants. Doc.

3

defendants Sanchez and Knudsen to proceed and (4) dismissed other claims. Doc. 23. Because there is no indication that any of the defendants were acting as federal officers, I dismissed the *Bivens* claims. *Id.* at 6-7.

In allowing the excessive force claims to proceed, I noted that "excessive force is a fact intensive inquiry" and I "cannot determine at this early stage if the force employed was reasonable under the circumstances." Doc. 23 at 9. As for the deliberate indifference claim, I found that "Rimmer simply makes the conclusory allegation that he has never been provided medical care for his injuries and he does not identify or name a defendant at the Dakota County Jail who knew of and disregarded his serious medical needs" and he "does not make any factual allegations specifically against [the named arresting officers] related to failing to address serious medical needs." *Id.* at 9. As such, any deliberate indifference claims under the Eighth Amendment and Iowa Constitution Article I, § 17 were dismissed. I further found that Rimmer's conclusory and unintelligible statements failed to assert a cognizable claim under Iowa Constitution Article I, §§ 1 and 4,[4] and I noted that "violations of a state constitution are not cognizable pursuant to § 1983," which "provides a remedy for violation of rights secured by federal statutes or the United States Constitution." *Id.* at 10 & n.5.

On December 23, 2024, defendants filed a motion (Doc. 30) to dismiss. Rimmer filed his resistance on February 18, 2025, and then defendants filed a reply (Doc. 32) on February 20, 2025.

---

24 at 6-7 n.3. Either way, I found that the Sioux City Police Department was not a proper § 1983 defendant because § 1983 specifically provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. *Id.*

[4] Rimmer's complaint does not explicitly allege that he was subject to an unlawful detention because of a lack of reasonable suspicion. To the extent his complaint could be construed to make such a claim, his conclusory allegations of racial profiling or harassment lack any underlying factual allegations that support such a conclusion. Such speculative allegations cannot state a cognizable claim. As such, I allowed only the excessive force claims to proceed past initial review.

4

## II. APPLICABLE STANDARDS

### A. *Motion to Dismiss Standards*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). In doing so, the court must draw reasonable inferences in plaintiff's favor. *Zink v. Lombardi,* 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.,* 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Bell Atlantic Corp v. Twombly,* 550 U.S., 544, 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557) (internal quotation marks omitted); *see also Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and "[w]e need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts.").

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual*

5

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). A court may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *see also Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating that courts can consider materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint" when assessing plausibility).

Courts must liberally construe pro se complaints. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Nevertheless, a court may dismiss a pro se complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2). In reviewing an in forma pauperis complaint, a court must weigh the facts alleged in favor of the plaintiff unless they are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25,

32-33 (1992). Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Qualified Immunity Standards

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and internal quotation marks omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[Q]ualified immunity protects officials who make bad guesses in gray areas." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). It "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts have the discretion to consider either of these factors first. *Ivey v. Audrain Cnty.*, 968 F.3d 845, 849 (8th Cir. 2020).

Like liability under Section 1983, qualified immunity is personal, so the court assesses each individual's conduct independently. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As to the first prong, courts "consider whether a constitutional violation . . . in fact occurred." *Jackson v. Stair*, 944 F.3d 704, 710-11 (8th Cir. 2019). "[T]he right allegedly violated must be defined at the appropriate level of specificity . . . ." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005).

As for the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates

7

that right.'" *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The Supreme Court has cautioned courts not to define clearly established law at too high a level of generality." *Ivey*, 968 F.3d at 849 (citing *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (per curiam)). A plaintiff bears the burden of proving the law is clearly established, even at the motion to dismiss stage of the proceedings. *See Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011); *Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019).

To show this, plaintiff must identify "either controlling authority or a robust consensus of cases of persuasive authority that placed the statutory or constitutional question beyond debate at the time of the alleged violation." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (internal quotation marks and citation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018) (internal citations and quotation marks omitted). Further, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 63 (internal quotation marks and citations omitted). A right is clearly established by controlling authority, or, absent that, a "robust consensus of cases of persuasive authority," which puts an officer on notice that his conduct is unlawful. *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Ashcroft,* 563 U.S. at 742).

### III. DISCUSSION

Defendants argue that they are entitled to qualified immunity on Rimmer's Fourth Amendment claims because their conduct was objectively reasonable in light of the legal rules that were clearly established at the time. *See* Doc. 30-1. They contend that Rimmer has failed to set forth that his rights were clearly established. In addition, they argue that the video evidence contradicts Rimmer's factual allegations and that no reasonable jury could find that defendants used excessive force because "the uses of force were

8

employed only insofar as the Plaintiff was eluding and resisting police officers' lawful efforts to arrest him." *Id.* at 10. Defendants also argue that any state law excessive force claim is barred by recent Iowa Supreme Court precedent not recognizing standalone causes of action for money damages under the Iowa Constitution. Defendants submitted video footage from the officers' body worn cameras and vehicles with their motion.[5]

Rimmer responds that defendants are not entitled to qualified immunity because they continued to use force after his arrest had been completed. *See* Doc. 31. He repeatedly refers to the video footage, asking the court to review it and asserting that it demonstrates that officers continued to strike him after he was arrested and that they knew that continuing to strike Rimmer after the arrest was a violation of his rights.

In their reply, defendants argue that Rimmer waived all arguments other than the resistance's sole contention that they are liable because they continued to strike him after he was arrested. *See* Doc. 32. Defendants further assert that the video footage conclusively shows that the officers did not strike Rimmer after he was arrested.

## A.   *Fourth Amendment Excessive Force*

The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005); see also *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2008) ("The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers.").

The standard regarding excessive force in the context of an arrest or a *Terry* stop is well-settled:

---

[5] The videos were submitted as Defense Exhibits A through D and are stored on the clerk's storage drive.

9

Case 5:22-cv-04058-LTS-KEM    Document 33    Filed 09/18/25    Page 9 of 20

> We analyze excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. *Henderson*, 439 F.3d at 502. The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson*, 439 F.3d at 502 (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004) and *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994)) (internal quotations omitted).
>
> We evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865. This calculus allows "for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S. Ct. 1865. The reasonableness inquiry, however, is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. 1865; *see also Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009).

*Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009); *see also Schoettle v. Jefferson Cty.*, 788 F.3d 855, 859 (8th Cir. 2015). "The standard for a violation of the right to be free from excessive force under the Iowa Constitution does not appear to differ from the federal standard." *McElree v. City of Cedar Rapids, Iowa*, 372 F. Supp. 3d 770, 793 & n.24 (N.D. Iowa 2019), *aff'd sub nom. McElree v. City of Cedar Rapids,* 983 F.3d 1009 (8th Cir. 2020).

10

### 1. *Sanchez*

As detailed above, the complaint's allegations against Sanchez center on his following Rimmer in his car, "harassing" him, tackling him and "slamming me very hard" onto the hood of a car. Rimmer acknowledges that Sanchez turned on his sirens in an attempt to stop him but that Rimmer kept driving. He further acknowledges that once he damaged his vehicle, he got out and ran away and he "wasn't just going to give up" and he was "in flight for his life." He also acknowledges that during that pursuit, when Sanchez reached him, Rimmer tried to grab Sanchez but was not successful.

Defendants argue that "[t]hese statement are admissions that Plaintiff tried to elude capture and arrest, and that the Plaintiff put hands on Officer Sanchez in an attempt to resist and defeat efforts to subdue Plaintiff for arrest." Doc. 30-1 at 11. To demonstrate Sanchez behaved reasonably, defendants rely on Iowa Code § 804.8(1), which provides that an officer "while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Defendants argue that "[w]hen Sanchez tackled Plaintiff, that force stopped Plaintiff's flight, and because Plaintiff has not alleged Sanchez has a purpose other than arresting an eluding suspect, that force should be found reasonable." Doc. 30-1 at 11.

As an initial matter, I find that I can properly consider the attached videos of the events when ruling on defendants' motion to dismiss. Both Rimmer's complaint and his resistance incorporate and rely on the videos to support his claims. Indeed, his resistance specifically requests that the court review the videos and neither party questions the authenticity or accuracy of the videos, which are integral to Rimmer's excessive force claims. *See Waters v. Madson*, No. 17-CV-93, 2017 WL 6403099, at *9 n.1 (D. Minn. Dec. 14, 2017), *aff'd* 921 F.3d 725 (8th Cir. 2019) (considering video footage attached to officers' motion to dismiss when granting their motion; "The Court may consider these recordings because they are necessarily embraced by the pleadings."); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (concluding that a document is

11

necessarily embraced by the pleadings if its contents are alleged in the complaint and the parties do not question the document's authenticity); *Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023) (stating that "[v]ideos of an incident are necessarily embraced by the pleadings, and we will consider the videos here" on appeal of a motion to dismiss); *Jackson v. Brooklyn Ctr.*, No. 21-CV-2072, 2023 WL 2368032, at *6–7 (D. Minn. Mar. 6, 2023), *aff'd sub nom. Jackson v. City of Brooklyn Ctr.*, No. 23-1678, 2023 WL 6876550 (8th Cir. Sept. 28, 2023) (considering body camera footage and police vehicle videos on a motion to dismiss when the video evidence was central to the claims, embraced by the pleadings and authenticity was not disputed, noting that the plaintiff "himself relies on video evidence in opposition to his Rule 12 motion").

The video footage is consistent with Rimmer's concession that he did not stop in response to Sanchez turning on his siren. It confirms that during Sanchez's pursuit of Rimmer, Rimmer exited the road, turned throughout an industrial parkway, drove past Knudsen's police vehicle facing him, and ended with Rimmer driving partially onto an embankment. Consistent with Rimmer's allegations, Rimmer ran from his vehicle to a ditch. When Sanchez stopped and exited his vehicle, Rimmer ran back out of the ditch and away from Sanchez.

Rimmer's allegations fail to mention that Sanchez yelled at Rimmer to get on the ground but he did not comply. Contrary to Rimmer's allegation that he gave up, the videos demonstrate that Rimmer came toward Sanchez, yelling at Sanchez "Kill me, bitch." Sanchez unholstered and pointed his firearm at Rimmer. From a reasonable officer's perspective, Rimmer plainly refused to comply with commands to pull over, attempted to flee and refused to comply with commands to get down on the ground. Sanchez quickly re-holstered his firearm as Rimmer moved toward another stopped vehicle and started to run. At that point, Sanchez grabbed Rimmer around his waist, tackling him onto the hood of the vehicle, while Rimmer wrapped his arms around Sanchez's neck as they struggled and wrestled to the ground.

12

Contrary to Rimmer's allegation that he unsuccessfully grabbed at Sanchez, he did grab Sanchez and wrap his arms around him. During the ensuing struggle, Sanchez got Rimmer to the ground and other officers joined to restrain Rimmer. Sanchez and Rimmer's physical struggle lasted a matter of seconds. From a reasonable officer's perspective, Rimmer was actively resisting arrest.

Under these circumstances, which are clearly depicted in the video evidence, Rimmer cannot show that Sanchez's actions in tackling Rimmer onto the hood and then onto the ground were objectively unreasonable. Rimmer acted in a dangerous and reprehensible manner. While resisting arrest, he was both a threat to safety and a flight risk. As such, two of the *Graham* factors support the use of force. *See Wertish v. Krueger*, 433 F.3d 1062, 1068 (8th Cir. 2006) (stating that "[t]he force employed was appropriate to the task at hand" when officer "forcefully threw" a plaintiff to the ground, pinned him down, and placed his weight on plaintiff's back before handcuffing him even though plaintiff was only "passively resistant"); *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (stating that "[a]n officer is entitled to use the force necessary to effect an arrest where a suspect 'at least appears to be resisting' [and we] have upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement."). Moreover, the circumstances were rapidly unfolding and unpredictable, due entirely to Rimmer's own conduct. *See Jackson*, 2023 WL 2368032, at *13-15 (officers did not use excessive force in tackling a plaintiff who was running away from officers under rapidly unfolding, dangerous circumstances; "Under sufficiently similar circumstances, courts have found that officers have not used excessive force by tackling a fleeing or noncompliant suspect."). An officer in Sanchez's position, faced with a fleeing subject not following orders, would reasonably stop the subject by tackling him. Because no reasonable jury could find that Sanchez used objectively unreasonable force such that he violated Rimmer's constitutional rights, Sanchez is entitled to qualified immunity.

In analyzing the reasonableness of Sanchez's actions, Rimmer's alleged reasons for evading police and failing to comply with their orders are irrelevant. *See Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018) ("Law enforcement officers are not required to read a suspect's motivations in failing to obey commands—it is enough that the officer reasonably perceives that the suspect is not following orders as given."); *Ehlers*, 846 F.3d at 1011 ("an arrestee's subjective motive does not bear on how reasonable officers would have interpreted his behavior"); *Jackson*, 2023 WL 2368032, at *10 ("While the Court does not diminish Jackson's concerns about his personal safety" that does not bear on a reasonable officer's interpretation). Nor is the subjective motivation of the officers relevant whether their use of force was reasonable under the Fourth Amendment. *Graham*, 490 U.S. at 397–98.

In addition, even if Rimmer could establish that Sanchez violated his constitutional rights, the claim must be denied because there is no clearly established law prohibiting Sanchez's actions. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104 (internal quotations omitted). *See also Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018) ("Failing to 'identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment' is often fatal to a claim outside of obvious cases.") (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Rimmer has not cited any case authority to rebut the defendants' assertion that Sanchez is entitled to qualified immunity. To the contrary, courts have afforded qualified immunity to officers who utilized various methods to take down plaintiffs who had not complied with orders or who were evading police. *See, e.g., Ehlers v. City of Rapid City*, 846 F.3d 1002, 1012 (8th Cir. 2017), (holding that officer executing a takedown of arrestee who ignored orders to put his hands behind his back, was noncompliant and continued walking did not violate a constitutional right).

14

Because Rimmer has not identified any case law that establishes that Sanchez's actions were objectively unreasonable and that would have informed Sanchez that he was violating Rimmer's constitutional rights, Sanchez is entitled to qualified immunity in his individual capacity on the Fourth Amendment excessive force claim.

### 2. *Knudsen*

The complaint alleges that Knudsen "b[ru]tally punched me with a closed fist that led to big black purple eye an[d]a blood clot in [my] eye an[d] a permanent marks on my face." Doc. 24 at 5. Rimmer stated Knudsen was "punching me with a close[d] fist in my eye" and "punching as hard [as] he can knocking me out." Consistent with Rimmer's allegations, the videos demonstrate that Knudsen did punch Rimmer. But the videos also contradict Rimmer's allegation that the punches either knocked Rimmer unconscious or continued after he was handcuffed and arrested.

The videos demonstrate that Knudsen arrived on the scene and ran over just as Sanchez brought Rimmer to the ground. Knudsen can be seen hitting Sanchez in rapid succession over the course of a second or two after Rimmer reached the ground on his back during his struggle with Sanchez. An officer arriving on the scene and seeing Rimmer's interactions and struggle with Sanchez would reasonably have interpreted Rimmer's behavior as dangerous resistance. The officers attempted to subdue Rimmer and move him to be face down on the ground and instruct him "Hands behind your back." Once he is face down, Rimmer repeatedly begins saying "Ok" and "I'm sorry." Officers then placed handcuffs on Rimmer. An officer stated that "all you had to do was cooperate," to which Rimmer responds with a request to kill him "because I don't want to be with you all."

Significantly, the videos contradict Rimmer's argument that the officers are not entitled to qualified immunity because "the officers continued to strike/punch him in the face" and because Knudsen had "prior knowledge that once a defendant is handcuffed and placed under arrest, to continue to strike him would be illegal, as well as a violation

15

of his constitutional rights, the use of force may be justified up until the time of arrest . . . [h]owever to continue to beat a handcuffed man after he is under arrest, is criminal." Doc. 31 at 1-2. Rimmer requests that the court review the video footage to determine whether the defendants continued to strike Mr. Rimmer after he was handcuffed. He states that the videos "will show that his claim of excessive force by the officers, when such force was used after Mr. Rimmer was handcuffed did away with any qualified immunity that they may have had when obtaining the arrest." *Id.* at 2. He argues that under the Iowa statute force may be used to "effect the arrest" but "once Mr. Rimmer was placed in restraints any use of force should have ceased . . . [h]owever it did not, and the video will show this." *Id.* at 3. He asserts that "the vi[de]o will show that continued force was used after the arrest was complete, with the court having the vi[de]o evidence to review the events that took place, should have no problem determining that a 'unreasonable seizure' by way of unnecessary force was applied and continued after the completion of the arrest. The officers continue[d] to punch and strike Rimmer until he was knocked out." *Id.* at 4.

Rimmer's contention that continued force was used after his arrest is demonstrably false. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the [video] record," courts must view the facts "in the light depicted by the videotape."); *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (holding court does not need to "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence.") (citing *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017)). The videos demonstrate that neither Knudsen nor any other officer hit Sanchez after they turned him face down and managed to handcuff him. Rather, the videos demonstrate that Knudsen hit Rimmer only during the struggle, before he was secured with handcuffs. The videos also show that Rimmer was never rendered unconscious. Rather, he was loudly verbal throughout the interaction. He can be heard talking throughout the time he was on the ground and

16

he continued to plead with officers not to send him to jail as he walked to a police vehicle. He did not complain of any pain or injury.

Even if Rimmer sufficiently alleged that Knudsen violated his constitutional rights, Rimmer has not met his burden of identifying any authority showing that there is clearly established law prohibiting Knudsen's actions. Case law does not demonstrate that the right to be free from this use of force was clearly established. In *Jackson*, for example, officers were deemed to have used reasonable force when, after taking the plaintiff down, one officer punched plaintiff in the ribs and another officer punched him in the midsection. 2023 WL 2368032, at *15-16. In that case, plaintiff struggled with officers who tried to gain control of him, yelling at them not to hurt him but ignoring officers' commands and the court noted that "[t]he video evidence does not show Officers Gauldin and Iverson applied any physical force to Jackson after he was restrained and handcuffed." *Id.*, at *15. The court found no constitutional violation, stating that "[o]fficers may use physical force to gain control of a suspect who appears to be resisting" and noting that "during their rapidly evolving in-person encounter" he "had ignored their commands, led them on a foot chase, and continued to struggle against them once he was taken to the ground." *Id.*, at 16. *See also Schoettle v. Jefferson City*, 788 F.3d 855, 860 (8th Cir. 2015) (determining that it was not unreasonable for officers to strike arrestee to gain control as he struggled with them); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1012 (8th Cir. 2017) ("we have held that officers may use force to handcuff a suspect who is resisting, even if that force causes pain"); *Shelton v. Lansing*, No. 4:16-CV-00538, 2018 WL 10124649, at *8 (S.D. Iowa Apr. 5, 2018) ("A reasonable officer would have believed Proehl's use of a punch to the face, a knee to the head, and pulling Shelton's hair was a reasonable use of force in light of Shelton's refusal to submit to arrest and the flight risk he posed, and was thus not a constitutional violation.").

The record does not establish that it would have been clear to a reasonable person that Knudsen's conduct in hitting Rimmer was unlawful in the situation that the officers confronted. Because Rimmer has not shown that it was clearly established that Knudsen's

17

conduct was objectively unreasonable, Knudsen is entitled to qualified immunity in his individual capacity on the § 1983 Fourth Amendment claim.

### 3. *Official Capacity Claims*

As for Rimmer's official capacity claims against the officers, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To impose § 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rimmer does not contend that an official policy or widespread practice caused a deprivation of his constitutional rights. Therefore, his official capacity claims against defendants cannot proceed**.** Moreover, because the court has determined that plaintiff did not suffer an underlying constitutional violation, official capacity liability cannot attach. *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). As such, Rimmer's official capacity § 1983 claims will be denied.

### B. *State Law Excessive Force*

As I noted in the initial review order, violations of a state constitution are not cognizable pursuant to § 1983, which only provides a remedy for violation of rights secured by federal statutes or the United States Constitution. To the extent that Rimmer asserts a distinct state law claim for excessive force in violation of the Iowa Constitution Article I, § 8, such a claim cannot proceed in this court.

In addition, as defendants point out, the Iowa Supreme Court held in 2023 that it "no longer recognize[s] a standalone cause of action for money damages under the Iowa Constitution unless authorized by the common law, an Iowa statute, or the express terms

18

of a provision of the Iowa Constitution." *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023), *reh'g denied* (May 23, 2023).[6] In the wake of that ruling, federal courts have dismissed Iowa state law excessive force claims seeking damages. *See, e.g., Maser v. City of Coralville, Iowa*, No. 3:23-CV-00028-SHL-HCA, 2023 WL 4248752, at *15 (S.D. Iowa June 23, 2023) ("The Court therefore *sua sponte* grants summary judgment in favor of Defendants on the portion of Maser's Count 6 that seeks damages for alleged violations of his rights under article I, section 8 of the Iowa Constitution."); *Perkins v. City of Des Moines, Iowa*, 712 F. Supp. 3d 1159, 1184 (S.D. Iowa 2024) (granting officer's motion for summary judgment on a § 8 excessive force claim based on *Burnett*).

The Iowa Supreme Court has applied *Burnett* retroactively and indicated that those state law claims arising before *Burnett* cannot survive. *See Wagner v. State*, 19 N.W.3d 119, 2025 WL 1006819 (Iowa April 4, 2025); *Venckus v. City of Iowa City*, 990 N.W.2d 800 (Iowa 2023) (applying *Burnett* to a claim filed before *Burnett*); *see also Christiansen v. Eral*, 4 N.W.3d 322 (Iowa Ct. App. 2024) ("our supreme court has repeatedly applied *Burnett* to cases in which the appeals were still pending at the time of the May 5, 2023 ruling in *Burnett* and concluded those claims were barred"). Thus, in the wake of *Burnett*, any claim for damages based on Article I, § 8 of the Iowa Constitution cannot survive. Moreover, even if Rimmer could pursue such an action, in view of the finding that defendants did not violate Rimmer's Fourth Amendment rights, it follows that defendants did not violate Rimmer's rights under Article I, § 8 of the Iowa Constitution. *See McElree v. City of Cedar Rapids*, 983 F.3d 1009, 1015 n.4 (8th Cir. 2020).

---

[6] Rimmer does not address the application of *Burnett* in his resistance.

## IV. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion to dismiss (Doc. 30) is **granted** in its entirety and all claims asserted by plaintiff Malik Rimmer are hereby **dismissed**.

2. Because this order disposes of all pending claims, this action is **dismissed** and the clerk's office is directed to **close this case**.

**IT IS SO ORDERED** this 18th day of September, 2025.

_____
Leonard T. Strand
United States District Judge